All rise. The United States Court of Appeals for the 9th Circuit now resumes its session. Good morning. Won't you be seated please? 0-4-5-0-5-1-9 United States v. LEAL-CRUZ Each side has 10 minutes if I recall this correctly. 10 minutes per side. Ready for the appellant? Thank you. You may proceed. Thank you. Good morning, Your Honor. Good morning. Ms. Rosalyn Farrell for Mr. Leal-Cruz. I'm sorry. Would you say that again for us? Rosalyn Farrell for Mr. Leal-Cruz, who is not present. I will start off by basically it will be a two-part argument. I'll address the constitutional issue and the effect of the burden of proof and how it was shifted to the defense as opposed to the prosecution. And the second portion of my argument, I will address the invited error and the plain error review doctrine. I believe at the time that we were arguing this case, there was no law specifically on point as it related to an attempted reentry under the Code section 1326 prosecution. It was we had just had some rulings, recent rulings, establishing that the case attempted reentry with a specific intent crime as opposed to a general reentry type situation. As such, I believe that the instructions that we had at the time that we were trying to determine the case were not on point. The cases that we had been arguing and thinking about at time of the trial were mostly general intent crimes, and they were on different sections such as illegal importation of aliens and illegal reentry. I believe to have required or I asked for the 6.5 instruction to be given. We had several sittings that we discussed what we should do about the law. Some of the sittings there was no decision by the court. At the end, I believe I asked twice. The first time was the 6.5 instructions, which gave the reasonable doubt instruction requiring the government to prove each and every element of the offense, including the specific intent to reenter, beyond a reasonable doubt. Well, now, you've talked about other cases, and it seems to me that U.S. v. Hernandez-Franco causes you considerable problems. The Hernandez-Franco can be distinguished from our case. The Hernandez-Franco case is actually a 1324 offense, which is illegal importation of aliens, and as such, that's a general intent crime. What we have here is a attempted reentry, which requires a specific intent to reenter. The language is conscious desire, and that's the case. And I thought that in Hernandez-Franco, the defendant was charged with attempt to transport illegal aliens to the United States, a specific intent crime. I thought that was just a — that's true. That's what the opinion says. But I thought it was more — Okay. So why isn't that just like ours? I mean, what makes your specific intent is the attempt, right? And all attempted crimes are going to be specific intent crimes, but that sort of oversimplifies the issue here. Your Honor, the issue in the Hernandez case was whether or not there had been a substantial step in transporting the aliens, which was more based on the facts of the case. Well, but what we're talking about, does duress negate the mens rea element of attempted illegal reentry, right? Yes. All right. And that's what was talked about in — isn't that what was talked about in U.S. v. Hernandez-Franco? Yes, it was. Okay. So why doesn't that just put the nail in the coffin and put it shut? Because here, the duress, we have substantial evidence factually, and I don't want to be re-arguing the facts of the case. We had the Mexican police on the other side of the fence. We had — it wasn't just that the defendant was testifying that he'd been held at gunpoint to enter. We had — But I mean, I understand all that, and I think we all do, but he wasn't claiming that he fell off the fence. No, Your Honor. I mean, it's — he admitted that he had the intent to get over the fence to get away from these people. Yes. Isn't he — what he's really saying is he has an excuse for why he did what he did. It's not that he didn't have the intent to do what he did. Your Honor, basically he's saying his intent was to run for his life, to run away from the Mexican police, and that's the only way or the only place he could think about the case. Right. And he got an instruction that, you know, supports that. Your Honor, the instruction, I think, was flawed in the sense that it wasn't just the defendant's testimony. In this case, we had other facts corroborating what the defendant was saying. Right. And in such a case, I think that the government should have one more level of proof in the sense that after all this substantial evidence presented by the defense, the government should also disprove what the defense has brought forward. In Hernandez-Franco, I don't think there was that much corroboration other than what the defendant was saying. So I guess what I'm saying is if his story was — or his theory was that he didn't intend to jump into the United States, I'd be with you. You know, if he says — his theory is, I fell in, I was on the fence and fell in, didn't have the specific intent to enter the United States, I think you'd get the instruction you now argue for. He's saying, I intended to enter the United States, I intended to jump off the fence and to get away from these people. And that's a different, you know, situation. Well, Your Honor, if he would have said he fell off the fence, that would have been more of an accident and an unconscious act in that category of acts. Here, his intent was to save his life. Other than that, I cannot answer any more without belaboring the point and coming back to the same answer. All right. I mean, which jury instruction did you believe was incorrectly given? The 6.6 that was given by the Court, the 6.5 would have been more appropriate. At the end, I did ask the Court to maybe put the last phrase of 6.5, where the language requires that the government prove the absence of duress beyond a reasonable doubt. That's the portion that the Court, first of all, did not give 6.5. But then at the very minimum, it should have given that last phrase of 6.5, added it to the instruction that it did. So you have no objection to 6.6 being given? Not in the way it was given. I do – I did object. I may not have been as strong and as – I didn't object as many times as we did. But if you were there when we were arguing, we had several sittings where nobody knew what to do, and parts of the sittings, we – there was no final ruling made. But I think as given with the modification that I've asked for, that would have been the correct language. I don't understand, and you'll have to correct me if I'm wrong on this, but I don't understand where you preserved your objection. At Defendant's Excerpt Record 30, you agreed with the judge that 6.5 does not apply. Why wouldn't you be bound by that statement? That is, why isn't this like Crane or Cain that you and the prosecution have joined in a jury instruction, and therefore you can't raise it on appeal? Because later on, I did ask the Court to add the language of 6.5. Okay. I thought you were on a different argument, because in your reply brief, you indicated you distinguished Cain on the basis that nothing was signed. I don't read Cain that way, so that isn't the issue. What you're saying is that you agreed at Excerpt 30 that 6.5 should not be given, but then you changed your mind and made a different objection. Why wouldn't the district court accept your first agreement rather than the second? I don't understand where you left the district court on this. At some point later on, you said, I really didn't mean that, or what? At the time that I accepted, where the Court inquired of me if there was preponderance, already we had had several discussions about the instructions, and I had already been overruled at some point previous to that. When I did accept it, upon further thinking the night and everything, we came back to the next session. That's when I asked that the language be added, that if the Court was going to give the 6.6, I didn't say it. I may not have said it as with a lot of articulation, or it may be did not come across as strong as maybe it should have. However, I did ask for the language that the government have to disprove, have to prove absence of duress. Now, are you saying that the last paragraph of 6.5 was what you were asking for? Yes, where the government – where the language where – which requires a government to prove absence of duress beyond a reasonable doubt. I don't understand that it says that, the last paragraph of 6.5. It strikes me that you're asking for something different. That is, I understand your argument. You want to say the defendant has to prove by a preponderance the evidence of duress, but then the burden shifts the government to prove the negative, that it doesn't exist beyond a reasonable doubt. But that isn't what this last paragraph of 6.5 says. Let me ask you. Did you submit a jury instruction with the language you requested? No, Your Honor. I did not. We just had 6.5 and 6.6 before us, and I did not submit a written instruction. At that time, we were just arguing it back and forth, oral argument. Okay. I understand. I was a trial lawyer at one time before I left, but that's why we have nights, I guess. But at any rate, would you turn to 6.5 and tell me where in the last paragraph the language indicates that there's a shift of burden of proof? My apologies. I don't have 6.5 in front of me. I know there was a specific paragraph I was referring to in my brief. It says if the government, is this what you're referring to? If the government fails to prove the absence of duress beyond a reasonable doubt, then you must find the defendant not guilty. Yes. Is that the language you wanted? I believe it's in my opening brief. This is the 6.5 to which she agreed to. It isn't in there. This was the instruction before the court. One moment. I will find it in my brief. Oh, I see. Well, my understanding is that the final jury instruction conference, you didn't object to carrying the initial burden of persuasion, but you asked that the instruction be supplemented to explain that the defense proved that if the defense proved duress by a preponderance of the evidence, then the burden shifted to the government to disprove duress beyond a reasonable doubt. That's what I said, yes. Your time is up. Thank you very much. Thank you. Good morning. Good morning, Your Honors. My name is Kevin Mulcahy. I represent the United States in this matter. May it please the Court, I'd first like to thank Your Honors for allowing this argument to be moved to 1115 from my colleague, Mr. Kernow. Unfortunately, he's had some caretaker issues, and that's required me to be here or, excuse me, allowed me to be here, Your Honors. With regard to the substantive factual issue, putting the waiver aside for a moment, the general rule for this circuit regarding duress, as Your Honors have stated, is that if it negates a mens rea element, the government should be required to carry that burden, and the burden should not be on the defendant. Reading the cases Dominguez-Mestiz, Fay Lynn, and Walker in conjunction with one another, and it appears that what's important in this circuit is how one defines what the mens rea is in a specific statute in order for the determination to be made regarding who carries the burden of proof. And what I mean by that is in Dominguez-Mestiz and in Fay Lynn, this Court indicated that although those cases involved specific intent crimes, that was not enough. If we simply – if the rule were simply if it's a specific intent crime, we wouldn't be here right now because 6.5 should have been given. However, Fay Lynn and Dominguez-Mestiz and all of the other cases require not simply a specific intent crime, but that the crime have a criminal intent such as an evil purpose or criminal state of mind. Well, now, all attempted charges are going to be specific intent crimes, correct? That's correct. So what's your position on how we look at all attempts? To look at all attempts, certainly under Fay Lynn – excuse me, under Hernandez-Franco, this Court held that an attempt in that case wasn't in and of itself requiring the government to prove absence of duress. So our position would not be that the government is always required to do that. In fact, our position is when we look at each specific attempt case and what an individual is attempting to do. So, for example, in 1326 context, this Court defined attempted reentry as a conscious desire to enter – to reenter the United States. And so when we look at what is meant by the term attempted entry, that's what we analyze, that's not merely the idea that it's an attempt crime, but what does the attempted entry mean? Yes, but I mean, in answer to Judge Callahan, isn't the answer that in an attempt, the specific intent is simply the specific intent to complete the crime? Correct. It is the specific intent to complete the crime. And in that regard, our position is that Hernandez – In an attempt to commit a general intent crime is simply the specific intent to commit the general intent crime. It doesn't have another level of specific intent on top of that. That's correct. It's simply that. And based on Hernandez-Franco, our position is that attempt crimes do not require the government to prove absence of duress. Unless, I guess, it was an attempt to commit a specific intent crime. Which, in that case, I think we then delve into it to more depth, because in Hernandez-Franco, in fact, it was an attempt to commit a specific intent crime. So, in other words, there were two levels of specific intent in Hernandez-Franco. There was also specific intent for the substantive crimes in Phelan and in Walker. And I believe perhaps my better argument was – or my better statement is this. The government does not believe we have to prove absence of duress in any attempt case. Hernandez-Franco stands for that proposition. Once we get – we look at the substantive claim that makes up the attempted crime. So whatever crime is the substance of that, we look to that offense. What is the specific intent, if any, in that offense? And that's how we analyze whether or not the government or the defense carries the burden of proof for duress. Now, is that – do you think that our case law in the Ninth Circuit clearly articulates the point that you've just made, or are you going just a little bit further? I believe I'm going a little bit further. I believe that Hernandez-Franco does stand for the proposition that attempt of a – attempt of a crime in and of itself does not require the government to carry its burden. I believe that is supported straight on by case law. The next level with regard to analyzing the substantive crime that the attempt makes up, I don't think this Court has specifically held that we need to look at exactly what the crime was and what the criminal intent was, although in Dominguez-Mestez and in Fay Lynn this Court does describe those substantive offenses a mens rea element requiring some type of evil intent or intent to commit a crime. So I guess my answer is we haven't addressed that specifically for this offense, but in general the statements I've made are supported by case law of this circuit. So if we thought what you – if we agreed with you, then is this – is this something worth publishing? I believe so, Your Honor, and that's because, as Ms. Farrell is correct, in that there were several pretrial hearings on this case, and both – I shouldn't say both. All three, the Court, the defense, and the government at times did show some confusion regarding this issue. And I think it would clear up the fact that a duress at the border, especially at the border, and Dominguez-Mestez talks about the unique problems at the border for the government to prove absence of duress. This would say – If we – if we publish what would we say more than we've already said in Soloranza-Anno, what would we say more than that? What we – what the government proposed, Your Honors, would say more than that is that even in the specific intent crime of attempted entry as opposed to the general intent crime of illegal reentry, the government does not have to prove absence of duress. So in other words, this Court has held that there are three separate offenses within 1326, including attempted entry found in illegal reentry. Attempted entry has been found to be a specific intent crime. There isn't a case published in this circuit or any circuit that I'm aware of that says absence of duress does not have to be proven by the government in an attempted reentry case. I think that would be very helpful, especially for our district, the Southern District of California, along the border, who runs into unique problems, as the Court has indicated, Dominguez-Mestez. And I won't repeat those, but difficulty on what they called an insurmountable burden for us to prove an absence of duress. Is 1326 a general intent crime? For the crimes of illegal reentry. 1326, is it a – is it a general intent crime? Yes and no. Yes and no. If I can explain that. It is for illegal reentry when it's simply illegal reentry or found in. However, when it's attempted illegal reentry, which does come from the statute itself, it does set forth a crime of attempted illegal reentry, that is a specific intent crime. So the three separate crimes that make up 1326, two are general intent and one is the specific intent. That's because every attempt is a specific intent crime by definition. Correct. And that was this Court's rationale in. Grisidis. Grisidis-Ula Barri, if I pronounced that right. The last point, and I think I've made it, so I'll only say it briefly, is I would remind the Court, as the Court in Dominguez-Mestez said, at the border, we really do have unique problems if the government is required to prove absence of duress. And that's something I think that the government would urge the Court to read that is very true in this case, just as it did in that case with regard to the difficulties of proving absence of duress at the border. On their theory of the difficulty the government has, why would we treat this one any differently than we do the insanity defense? I'm not sure I understand Your Honor's question. The insanity defense. It says I'm insane. The government has to prove beyond a reasonable doubt that they're sane. The government at this time, the defendant says it was under duress. Why wouldn't the same rule apply? Your Honor, the — because duress comes from outside forces as opposed to an internal mental defect, which insanity, roughly called insanity or the mental defense or defect defense comes from, where that individual can be and the government has the right to have that individual analyzed or I shouldn't say analyzed, interviewed by a psychologist or psychiatrist. That's an internal force that is subject to scientific review, whereas duress involves factual issues from outside forces, outside individuals, outside numerous individuals at times, that is almost impossible for the government to disprove when the story comes entirely from the defendant himself. And that's where the government believes that these two, insanity, for lack of a better word, and duress differ. And why wouldn't counsel's suggestion that there be a preponderance of evidence that they'd show and then you'd have something like you do, you'd have something inside that you could then try and prove beyond a reasonable doubt? Why wouldn't that apply well here? If they carried their burden by preponderance of the evidence, the defendant acted under duress.  They win. That's our understanding of, or certainly my understanding of 6.6. If they carried that burden of showing that they're at, that Mr. Leal Cruz acted under duress, then they've already won. Let me ask you this. When you compare insanity and duress, my, you know, and I'm just sort of going back to my state court days because I didn't actually, I didn't sit as a trial judge in the federal court but I did in the state court, that insanity defenses are raised in advance of trial and there's a whole procedure that goes on. My understanding of duress is it's not, you don't have to plead it as a separate defense. It's just, it's something that comes up in jury, you know, after all the facts are before the court and what the parties decide that they want to, you know, how they want to argue the case. And they say, well, look, there's evidence of duress here and so there would be nothing that, you know, I think it would be pretty hard for the government at that particular juncture in the middle of trial and you wouldn't necessarily know that they were going to raise that before, would you? No, we would not, Your Honor. And Your Honor is exactly right regarding the procedure. The government would, is left when a duress or necessity defense is raised, the government Insanity maybe doesn't work. How about entrapment? How does entrapment work? Who's got the burden of proof there? Doesn't defendant have to come forward with some evidence of entrapment and then the government has the ultimate burden to prove lack of entrapment? That's correct, Your Honor. And the defendant has to carry a certain amount of proof and I believe it's a prima facie case, but I'm not entirely sure what burden he carries. I understand your argument about insanity. Everybody is in the same boat. I mean, the ability to prove or disprove sanity is just as available to the government as to the defendant. But entrapment, why do we have a different rule for entrapment than we do for duress? The only, I hesitate to guess, I would offer that entrapment does involve allegations of government misconduct and requires the government to sort of tell on itself and that is something a little more under the government's control than perhaps the duress. But other than that, I don't have much to offer on that. I wish I did. Fair enough. And you're over your time. Thank you. Thank you very much. Your Honor. You've used up your time. We'll give you 30 seconds if you'd like it. You don't have to if you don't want to. If you've said everything you needed to say, that's fine, too. Your Honor, it's just, I think... If you'd come to the microphone because we're making a recording. Thanks. I think the point of analysis should be what happens once the defense puts forth evidence, substantial evidence, preponderance of evidence, what happens then to the government's burden. And that's, I think, where the analysis, with all due respect, should lie in the sense that this is not just where we're just saying all we have is a defendant's testimony. We have substantial corroboration that the government could have followed up on. Well, how are they going to do it right in the middle of trial, though? You ask for a recess and then decide, you know, then you have to go down to Mexico and find out if the police are really after him and are really threatening him and want to kill him and all of that. I mean, if I were the trial judge, I'd say, well, you know, we're not going to keep these, you know, recess for a month and then come back when you can do something about it. Your Honor, the existence of the Mexican police and the conversation at the time of the arrest is the important question, factually. They knew about the police. Well, he didn't. But when he got arrested initially, he didn't tell the agents that it was because of the defense that you raised at trial. Because he testified that he wanted to stay on the side as opposed to being relinquished. Well, okay, that was his reason, but how does that put the government on notice that they're supposed to talk to the Mexican police right there? Well, it doesn't happen too many times in my reading of other 1326 cases where we have the Mexican police on the other side asking for the prisoner to be given back. I think this is factually a little bit more different and more significant, the existence of the police on the other side, where they actually have a conversation between the American side and the Mexican side, and the Mexican side is asking for him to be given back. I think at that point, just the fact that, I mean, we wouldn't have even had this defense, Your Honor, if that one line in the police report would not have been included in the reports that the Mexican police were there. Regardless of what my client was telling me, I wouldn't have even known about it. There was only one line in the entirety of the police report. So I think this kind of distinguishes itself where there is an actual conversation and they didn't even write down the name of the Mexican police officer where defense could go and find. We actually did find a witness, but not subject to our subpoena. Thank you. Anything else, Judge Kelly? Thank you. The case just argued is submitted. Thank you very much for filling in at the last minute. You did a great job today, both sides, too. Thank you. I'll rise. This court for discussion stands adjourned.
judges: Wallace, Silverman, Callahan